UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICTOR D. COBB,

       Plaintiff,                      CIVIL ACTION NO. 10-10023

       v.                               DISTRICT JUDGE VICTORIA A. ROBERTS

COMMISSIONER OF               MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
                                  /

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.    PROCEDURAL HISTORY**

    *A.    Proceedings in this Court*

On January 4, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of Disability Insurance and Supplemental Security Income benefits (Dkt. No. 3). This matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 7, 8).

    *B.    Administrative Proceedings*

Plaintiff filed the instant claims on November 30, 2006, alleging that he became unable to work on April 3, 2006 (Tr. 89-92, 93-97). The claim was initially disapproved by the Commissioner on January 22, 2007 (Tr. 40-44, 45-48). Plaintiff requested a hearing and, on March 12, 2009, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Troy M. Patterson, who

considered the case *de novo*. In a decision dated April 20, 2009, the ALJ found that Plaintiff was not disabled (Tr. 9-21). Plaintiff requested a review of this decision on April 30, 2009 (Tr. 6-8). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on October 30, 2009, denied Plaintiff's request for review (Tr. 1-3).

After review, I find that the Administrative Law Judge's opinion contains errors of law. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**, Defendant's motion for summary judgment be **DENIED**, and that this matter be **REMANDED** for further proceedings consistent with the discussion below.

## II. STATEMENT OF FACTS

### A. *ALJ Findings*

Plaintiff was 41 years old at the time of the alleged disability onset date (Tr. 17). Plaintiff has past relevant work as a heavy equipment operator and a general laborer (Tr. 16). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since April 3, 2006, Plaintiff's alleged disability onset date (Tr. 14). At step two, the ALJ found that Plaintiff had the following "severe" impairments: back and leg pain. *Id*. At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id.* Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "the full range of light work" (Tr. 14). At step four, the ALJ found that Plaintiff could not perform his previous work as a heavy equipment operator and general laborer (Tr. 16). At step five, the ALJ relied on the Medical-Vocational Guidelines (the "grids"). Specifically, based on Plaintiff's functional capacity for a full range of light work, age, education and experience, the ALJ found that Medical-Vocational Rule 202.21 directed a finding of "not disabled."

### B. *Administrative Record*

#### 1. **Plaintiff's Testimony and Statements**

Plaintiff testified that he had severe back pain, though surgery had "helped to a certain extent" (Tr. 32). Plaintiff stated that his wife worked during the day, and Plaintiff testified that he would "help out around the house as much as possible," but "[s]tanding for a long time" hurt his back and leg (Tr. 33). He would nap every day for "sometimes . . . maybe an hour" or "other days . . . most of the day" and do stretches from his physical therapy sessions to help alleviate the pain (Tr. 33-34). Plaintiff testified that he was "dealing with over the counter drugs" because he did not like the side effects of prescription medication (Tr. 33).

#### 2. **Medical Evidence**

On April 16, 2006, Dr. Blake Bergeon examined Plaintiff for a trial of epidural injections due to back pain from a herniated disc in his lumbar spine (Tr. 160-61). Dr. Bergeon noted "some decreased sensation" in Plaintiff's left foot and a "diminished left ankle jerk," but no abnormalities on his right side (Tr. 160). Dr. Bergeon diagnosed left lumbosacral radiculopathy and recommended injections (Tr. 161), which he administered two days later (Tr. 162). Dr. Mark S. Adams, the neurosurgeon who referred Plaintiff for the injections, noted that this "conservative treatment" gave Plaintiff "some improvement" (Tr. 196).

On May 4, 2006, Plaintiff was admitted to Mid-Michigan Medical Center with continued back pain complaints (Tr. 193). Dr. Adams reviewed an MRI of the herniated disc and recommended Plaintiff undergo a microdiskectomy (Tr. 177). Dr. Adams performed the surgery the next day, removing "a large disk fragment that was compressing" a nerve root (Tr. 193). After completing the surgery, Dr. Adams found "the nerve root . . . to be free" from any compression (Tr. 193).

Plaintiff underwent physical therapy at Mid-Michigan Health Rehabilitation Services beginning on July 13, 2006 (Tr. 186). He reported a "pinprick sensation" in his left calf that would "come and go," left calf cramps when he climbed stairs, and pain in his lower back muscles that varied (Tr. 186). Plaintiff described the pain as worse if he was "not active and ha[d] been sedentary most of the day," and that he would not have a significant increase in pain "if he [kept] moving through the day" (Tr. 186). Plaintiff had stopped fishing, hunting, and outdoor activities due to his back surgery, and was experiencing difficulty putting on his socks and shoes (Tr. 186). Plaintiff reported that "riding his riding mower to cut his grass . . . was not too bad," that he could do laundry, and "walk for up to 1 to 2 hours or more at a time" (Tr. 186). The therapist noted that Plaintiff limped slightly on his left leg, but could walk on his heels and toes, though it caused left toe pain (Tr. 186). Plaintiff had some limitations bending forward and rotating his trunk to the left (Tr. 187). Plaintiff attended several therapy sessions from mid-July through mid-August 2006 (Tr. 182).

On August 14, 2006, Plaintiff returned to Dr. Adams complaining of pain in his hips, some muscle spasms, and calf pain (Tr. 170). Plaintiff's employer had terminated him (Tr. 170). X-Rays taken in August revealed an "[u]nremarkable lumbar spine" with no abnormal movement on flexion or extension (Tr. 184, 189). Dr. Adams recommended continued therapy (Tr. 170). Plaintiff continued therapy during that same month, reporting that his pain would range from 6 out of 10 to as low as 1-2 out of 10 (Tr. 182). Plaintiff was compliant with his home exercise program, and the program caused no increase in symptoms (Tr. 182). Plaintiff returned on September 7, 2006, reporting a 30% total improvement, with some continued pain and left-sided weakness (Tr. 180). The therapist noted Plaintiff had a 20% decrease in range of motion when bending forward, but no limitations bending backwards or rotating (Tr. 180). He opined that Plaintiff had "made good gains in physical therapy" with increases in strength, flexibility, and range of motion (Tr. 180).

Plaintiff returned to Dr. Adams on September 25, 2006, with "tightness" in his back (Tr. 169). Dr. Adams noted that "apparently [Plaintiff's] insurance is running out" (Tr. 169). Dr. Adams observed muscle spasms, a decreased range of motion, and calf weakness, and recommended home exercises to try and avoid surgery if he could (Tr. 169).

Dr. Matthew Branch, a state agency physician, reviewed the record on January 19, 2007, and opined that Plaintiff could perform light work with occasional postural limitations, except that he could never climb ladders, ropes, or scaffolds (Tr. 204), and should avoid concentrated exposure to hazards, such as machinery or heights (Tr. 206).

Plaintiff returned for a scheduled follow-up appointment with Dr. Adams on January 22, 2007 (Tr. 214). Plaintiff reported back stiffness and aches, especially if he walked on his treadmill "for any distance" (Tr. 214). "He [did] not have significant pain down his leg," but did have a decreased range of motion (Tr. 214). Plaintiff also reported pain when he tried to stand up after sitting for long periods of time (Tr. 214). Dr. Adams noted "some issues that need[ed] to be resolved in terms of his insurance and compensation" (Tr. 214).

Dr. Adams next treated Plaintiff on March 5, 2007 (Tr. 213). Plaintiff was "having miserable pain" and Dr. Adams restricted him to lifting no more than 10 pounds and limited him to no bending, twisting, or stooping (Tr. 213). Dr. Adams observed muscle spasms, a positive straight leg raising test, and some unspecified numbness (Tr. 213). Dr. Adams indicated that Plaintiff "may require a lumbar fusion," but needed "some of the other issues to resolve" so he could get Plaintiff an MRI and consider him for treatment (Tr. 213).

### 3. Vocational Expert

A VE testified that a hypothetical claimant with Plaintiff's vocational characteristics and a residual functional capacity ("RFC") to perform light work could not return to Plaintiff's past relevant work (Tr. 36).

### C. *Plaintiff's Claims of Error*

Plaintiff's primary contention on appeal is that the ALJ erred in relying on the "grids" to find him not disabled because Plaintiff has non-exertional limitations, namely, certain postural and environmental limitations. Plaintiff contends that – where a non-exertional limitation might substantially reduce a range of work an individual can perform – the use of the grids is inappropriate and the ALJ must instead consult a vocational expert.

## III. DISCUSSION

### A. *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has

failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their

insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C. *Analysis and Conclusions*

As noted earlier, Plaintiff's primary contention on appeal is that the ALJ erred in relying on the "grids" to find him not disabled because Plaintiff has non-exertional limitations, namely, certain postural and environmental limitations. Specifically, Plaintiff contends that – where a non-exertional limitation might substantially reduce a range of work an individual can perform – the use of the grids is inappropriate and the ALJ must consult a vocational expert. Plaintiff's argument is well-taken.

In his decision, the ALJ gave the state agency physician's (Dr. Branch) opinion "significant weight," but did not include any of Dr. Branch's non-exertional limitations in his RFC finding (Tr. 14) or discuss why he declined to do so (*see* Tr. 16). Defendant concedes that the ALJ did not articulate a reason for excluding the non-exertional limitations from Dr. Branch's opinion from his RFC finding; Defendant further concedes that this oversight "technically make [the ALJ's reliance on Grid Rule 202.21 inappropriate" (Def. Brief at 16).

Despite making these concessions, Defendant avers that the ALJ's error is "harmless," since the ALJ likely would have found Plaintiff "not disabled" anyway. Specifically, Defendant argues that, rather than misapplying Grid Rule 202.21, the ALJ could have applied the corresponding sedentary work rule, Grid Rule 201.21, to conclude that Plaintiff was not disabled within the meaning of the Act because: (1) Plaintiff's age category was "younger individual" (between ages 18 and 49); (2) Plaintiff had at least a high school education and was able to communicate in English; and (3) Plaintiff had the RFC to perform a full range of sedentary work. However, the ALJ did not apply Grid Rule 201.21, and the undersigned is not convinced that this error is harmless.

Defendant attempts to distinguish the case cited by Plaintiff – *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) – on the basis that it is not from the Sixth Circuit. However, Sixth Circuit law is generally in accord with *Zurawski*. *See Abbott v. Sullivan*, 905 F.2d 918 (6th Cir. 1990). In *Abbott*, the Sixth Circuit recognized that the Secretary employs the Medical-Vocational Guidelines, also referred to as the "grid," in the fifth and final stage of the disability determination, after it has been determined that the claimant has not met the requirements of a listed impairment but is nevertheless incapable of performing past relevant work. At this point, the Secretary bears the burden of demonstrating that, notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy.

Where the claimant suffers from an impairment limiting only his strength, the Secretary can satisfy his burden – without considering direct evidence of the availability of jobs the particular claimant can perform – through reference to the grid. The grid aids the Secretary in determining disability claims by allowing "administrative notice" to be taken of the existence of jobs in the national economy that those with particular combinations of the four statutory factors are capable of performing.

The Medical-Vocational Guidelines take account only of a claimant's "exertional" impairment; that is, "an impairment which manifests itself by limitations in meeting the strength requirements of jobs[.]" 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). Where a claimant suffers from an impairment that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength – for example, where a claimant suffers from a mental illness, *see, e.g., Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 772 (6th Cir. 1987); manipulative restrictions, *see, e.g., Hurt v. Sec'y of Health & Human Servs.*, 816 F.2d 1141, 1143 (6th Cir. 1987); or heightened sensitivity to environmental contaminants, *see, e.g., Shelman v. Heckler*, 821 F.2d 316, 322 (6th Cir.1987) – rote application of the grid is **inappropriate**. Here, the ALJ gave the opinion of the state agency physician "significant weight," but did not incorporate that doctor's non-exertional limitations into the RFC.

Accordingly, if the ALJ should somehow determine upon remand that Plaintiff does not qualify for disability benefits, a final determination of "not disabled" may only be entered if supported by expert vocational testimony or other similar evidence to establish that there are jobs available in the national economy for a person with Plaintiff's characteristics. If a VE is employed to satisfy this burden, he or she must, of course, be informed of Plaintiff's non- exertional limitations if his or her opinion is to carry evidentiary weight.

In sum, the undersigned finds that the decision of the ALJ contains errors of law that are not harmless. Specifically, the ALJ inappropriately used the "grids," since Plaintiff has non-exertional limitations. The ALJ should have consulted a vocational expert instead of applying the grids. Accordingly, this matter should be remanded for a new hearing.

### III. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**, that Defendant's motion for summary judgment be **DENIED** and that this matter be **REMANDED** for further proceedings consistent with this Report and Recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                          s/Mark A. Randon
                                          MARK A. RANDON
                                          UNITED STATES MAGISTRATE JUDGE

Dated: December 13, 2010

## ***Certificate of Service***

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, December 13, 2010, by electronic and/or first class U.S. mail.*

        *s/Melody R. Miles*
        *Case Manager to Magistrate Judge Mark A. Randon*
        (313) 234-5542